UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

APPEAL CASE No. 15-22380-KMM
LOWER TRIBUNAL CASE NO. 13-14289-RAM

SAMUEL D. ROSEN,
APPELLANT,

V.

THOMAS L. ABRAMS
APPELLEE,

ON APPEAL FROM ORDERS OF THE U.S. BANKRUPTCY COURT,
SOUTHERN DISTRICT OF FLORIDA

## THOMAS L. ABRAMS' OPPOSITION TO GLORIA EZRIN'S MOTION TO INTERVENE AND INCORPORATED MEMORANDUM OF LAW

Appellee, Thomas L. Abrams files this his opposition to Gloria Ezrin's Motion to Intervene and states [D.E. 13] and states:

1. The underlying Chapter 11 case of the Fort Lauderdale Bridge Club, Inc. ("Bridge Club") was filed on February 26, 2013 [ECF 1]. At the time of filing the Bridge Club had approximately 600 members, was a 501(c)(7) nonprofit and was open to members who pay a $25.00 per year membership fee and guests who may play as well but pay a higher per game fee. See ECF 1286.

2. On February 27, 2013, the Debtor, The Fort Lauderdale Bridge Club, Inc. filed its Application to employ Gamberg & Abrams and Thomas L. Abrams as bankruptcy counsel. The Application was granted on a final basis after notice and hearing on April 5, 2013, *nunc pro tunc,* to the Petition date [ECF 24].

3. By Agreed Order a Trustee was appointed on May 10, 2013 [ECF 63] and a Successor Trustee was appointed on August 14, 2013 [ECF 240].

4. The history of this case is well chronicled in the bankruptcy docket, including the Settlement Agreement dated May 1, 2014 [ECF 1089] and Second Amended Plan approved on February 25, 2015 [ECF 1325]. The Second Amended Joint Disclosure Statement [ECF 1286] and the Second Amended Plan, both approved by the Court, provide a detailed and concise summary of the case.

5. Subsequent to approval of the Settlement Agreement, (Mr. Rosen received his $75,000.00) the Second Amended Plan was confirmed and closing of the bankruptcy case, Mr. Rosen served a hand written demand on the Bridge Club (signed only by himself) on his behalf and purportedly on behalf of certain other members - past and current of the Bridge Club to bring a "derivative" action against the undersigned for alleged "malpractice" relating to alleged actions taken during the undersigned's Chapter 11 representation of the Bridge Club ("Demand Letter").[1] In response, the undersigned filed a Motion to reopen the bankruptcy case in order to file a Motion to Enforce the Settlement Agreement as to Samuel D. Rosen [ECF 1343] and a Motion to Enforce the Plan and Confirmation Order [ECF 1344].[2] These Motions were set for hearing and granted by the bankruptcy court [ECF 1350 and 1351]. Mr. Rosen appealed both Orders.

6. Because Mr. Rosen had already released all claims against the undersigned pursuant to the Settlement Agreement, the Motion to Enforce the Settlement Agreement was filed as to Mr. Rosen. Pursuant to the Settlement Agreement, Mr. Rosen released and waived all claims against the

---

[1] A true and correct copy of the hand written demand is attached hereto as Exhibit "A".
[2] Mr. Rosen released all claims and therefore had no standing or interest in the Motion to Enforce the Plan and Confirmation Order. These are issues for determination on appeal.

2

Bridge Club and was to have no further involvement with the club. Accordingly, there was no need to enforce the Plan as to Mr. Rosen or seek any other relief as he had no standing. That is the reason Mr. Rosen was not in any way part of the bankruptcy or Plan Confirmation process and the reason he did not attend or participate in the hearing on the Motion to Enforce Second Amended Plan and Order Confirming Second Amended Plan. Of course, Mr. Rosen claims to the contrary.

7. The Motion to Enforce Second Amended Plan and Order Confirming Second Amended Plan was filed to ensure the Bridge Club was not required to take any action in regard to the aspect of Mr. Rosen's April 7, 2015 Demand Letter as it provided a cryptic reference that the demand letter was on behalf of unnamed current and former members.[3]

8. The Order Granting Emergency Motion to Enforce Second Amended Plan and Order Confirming Second Amended Plan and Release, Exculpation, Injunction and Discharge Provisions therein related solely to the April 7th Demand Letter and claims alleged therein and the injunction was limited to the Bridge Club directly or any persons claiming by or through the Bridge Club directly or derivatively. Accordingly, by its terms the Order solely relates to claims alleged in the Demand Letter and brought by or through the Bridge Club.

9. The individual who seeks intervention, Gloria Ezrin, fails to set forth any basis for the intervention other than a general statement that the Order in which the appeal was taken prejudices rights of Ms. Ezrin. See paragraph 3 of Motion to Intervene.

10. Ms. Ezrin fails to even reference which order on appeal she alleges prejudices her

---

[3] The Bridge Club has never expressed any dissatisfaction with the undersigned's representation; rather, there has always been great appreciation for the representation through the successful confirmation. See ECF 1373, confirmation transcript and Judge Isicoff's and the Trustee's statements therein.

3

rights as a former member of the Bridge Club.[4] The Order Granting Thomas L. Abrams' Motion to Enforce Settlement Agreement has no relationship to Ms. Ezrin as she did not release any alleged claims against the Bridge Club and other released parties, including the undersigned.

11. While one should not have to guess as to which order she is seeking intervention, to the extent it is the Order Granting Motion to Enforce, Ms. Ezrin has failed to assert any grounds other than general prejudice. Ms. Ezrin has failed to identify any reason why the appeal by Mr. Rosen is not properly represented by Mr. Rosen. Moreover, her attorney is the same as Mr. Rosen's Appellate Counsel.

12. Ms. Ezrin has not even indicated whether or not she was one of the other unnamed certain current and former members referenced in Mr. Rosen's demand letter. If Ms. Ezrin was and had authorized Mr. Rosen to file the demand letter on her behalf, then her interests are represented by Mr. Rosen. Additionally, she would clearly have been aware of Mr. Rosen's efforts and could have made her name public, attended the hearing on the Motion to Enforce Plan and Confirmation Order and timely appealed same. Ms. Ezrin's rights are represented by Mr. Rosen as his Demand Letter was purportedly on her behalf. She cannot have any greater rights than Mr. Rosen as a result of this appeal.

13. Moreover, in order to assert any claim against the undersigned and/or his firm, Ms. Ezrin would first need to seek permission of the bankruptcy court under the Barton Doctrine. *Lawrence v. Goldberg*, 573 F. 3d 1265 (11th Cir. 2009). Ms. Ezrin has not done so and accordingly she cannot assert that her rights have been prejudiced. Had Ms. Ezrin asserted that she was seeking relief against the undersigned, notice would have been provided and a motion would have been filed

---

[4] The motion to intervene asserts she was a member at all material times herein, but fails to reference the import of such

4

additionally enjoining Ms. Ezrin pursuant to the Barton doctrine.[5] This was not necessary at this time as to Mr. Rosen as his claims, direct and indirect, were clearly released by the Settlement Agreement.[6] The obligation to seek permission from the bankruptcy court is upon the claimant.

14. There is no prejudice to Ms. Ezrin, she had no right to bring any actions and if she did, she still has them. The only matters covered by the Order are claims of the Bridge Club which were released and barred by the Confirmed Plan which is final and non-appealable. Moreover, the Bridge Club did not oppose the Order Enforcing the Plan or appeal same. The Trustee in bankruptcy owned any claims as alleged by Mr. Rosen in his demand letter and they were released pursuant to the plan. No member or former member is prejudiced or their rights prejudiced by that occurring. To the extent, however, Ms. Ezrin does believe she had or has a claim; she would first need to seek permission of the bankruptcy court to pursue same under the Barton Doctrine.

15. Ms. Ezrin also fails to set forth any facts to support her assertion that her intervention is timely. A conclusory statement is facially insufficient and accordingly no further response can be made at this time.

16. When intervention is not sought timely in the court below intervention on appeal will only be permitted in an exceptional case for imperative reasons. *Hutchinson v. Pfeil*, 211 F 3d 515, 519 (10th Cir. 2000); *Amalgated Transit Union Int'l, AFL-CIO, et al. v. Donovan*, 771 F.2d 1551 (D.C. Cir. 1985) (per curiam). Here, intervention is being sought on appeal and this case is not exceptional nor are the movant's reasons (or lack thereof) imperative. Movant never appeared in the

---

statement or why certain times are allegedly material.
[5] All of the allegations made in the demand letter, to the extent comprehensible, would be barred by the Barton Doctrine.
[6] Mr. Rosen never sought permission of the bankruptcy court either and his claims, if hypothetically any are ever found to exist as not released under the Settlement Agreement, would also be barred by the Barton Doctrine and he would need to seek bankruptcy court permission prior to bringing any claims.

5

bankruptcy case since its filing on February 26, 2013 or any aspect of this case until an untimely motion to intervene was filed below and then before this Court.

17. Based on the foregoing and the lack of even a prima facie basis supporting intervention, Ms. Ezrin's Motion to Intervene should be denied.

Dated: September 8, 2015.    Respectfully submitted,

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court of the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

GAMBERG & ABRAMS
*Attorneys for Thomas L. Abrams*
1776 North Pine Island Road, Suite 215
Fort Lauderdale, Florida 33322
Telephone:  (954) 523-0900
Facsimile:  (954) 915-9016
E-mail:  tabrams@tabramslaw.com

By: /s/ Thomas L. Abrams
         Thomas L. Abrams, Esquire
         Florida Bar No. 764329

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document(s) was/were served this 8th day of September, 2015, via electronically through CM/ECF Notice of Electronic Filing to Gloria Ezrin and Samuel D. Rosen via their attorney, Douglas C. Broeker, and to all parties registered to receive notice and/or via U.S. Mail as noted to all parties on the attached Service List:

By: /s/ Thomas L. Abrams
Thomas L. Abrams, Esquire
Florida Bar No. 764329

## SERVICE LIST

*Notice via U.S. Mail:*
The Fort Lauderdale Bridge Club
700 NE 6th Terrace
Ft. Lauderdale, FL 33304

MS 1

4/2/15

To: Jesse Laird, Manager, Ft. Lauderdale Bridge Club
700 NorthEast Terrace
Ft. Lauderdale, FLA. 33304

From: Sandy Rosen

Jesse, please photostat this letter and distribute copies to All Board Members ASAP. Thank you, Sandy.

To: the Members of the Board

Pursuant to Ch. 617.07401, Fla. Statutes, demand is hereby made on behalf of the undersigned and certain other members – past and current – to initiate action to recover from Thomas Abrams all damages occasioned by his wrongful conduct, including:

(1) Malpractice in advising the Club to file a Bankruptcy Petition without at least first attempting to settle disputes with me;

(2) Demanding and Receiving from then-President Bozek a form of Retainer Agreement containing a "Fully earned when paid" clause in violation of Rule 4-1.5(e), Fla. Rules of Professional Conduct;

(3) Filing a Bankruptcy Petition which is fraudulent including, e.g., omitting almost $600,000 in Real Estate Assets which are listed on the Club's

EXHIBIT "A"

page 2

tax return, filed 9 days earlier, on February 17, 2013 and covering the period ended December 31, 2012;

(4) Refusing to withdraw or amend the Ch. 11 Petition even when confronted with its faults;

(5) Acting without authorization of the Board and Society to approach Judge Ray when, on April 16, 2013, agreeing with Judge Ray that a Trustee should be appointed;

(6) Then proceeding to file a motion for appointment of a Trustee on April 19 without discussing to the Board that he had already agreed to do so and the costs of same (note, for the 2+ months that Welt was the Trustee, the union fees approximately totaled $100,000);

(7) Filing a Final Fee App. in May, 2013 seeking $38,000 (8,000 more than the $30,000 retainer payment) which indicated that Aronson spent almost $6,000 working alone for 19 hours to prepare the Bankruptcy filing of the total 24 hours from his retention at about 6:30 pm, Friday, 22 to the filing at 4 pm on February 26;

(8) Aronson repeatedly representing to the Court after the Trustee appointment that his ongoing services were pro bono, that he would not charge ~~charge~~ charge

[ 10 ]

the Courts saw then, Abrams submitted another Fees application which the new Bankruptcy Judge granted; and

(9) Filing a motion, as a front for the new Trustee, Tabas, for the Court to authorize solicitation of contributions from members, ostensibly for the Club's benefit, without disclosing that if a plan of arrangement was not reached, ie the Club was liquidated — put out of business — the contributions would not be returned to the members, but rather, would go to the Trustee and his law firm.

(10) The magnitude of Abrams' misconduct and malpractice is that separate and apart from Fees to Weir and his entourage and to Abrams himself, the Court has allowed almost $1.5 million in fees and expenses to Trustee Tabas and his entourage which as late as April 18, the Club could have settled with Rosen for less than $200,000, all or most of which to be paid by the Club's insurance carrier.

Any rational, objective person looking at these facts could not help but conclude that Abrams' conduct and his advices to save the Club turned out to be an unmitigated disaster, indeed, perhaps the biggest case of misconduct/malpractice in bankruptcy annals.

p. 4

Pursuant to Ch. 617.07401, you have 90 days to take action, following which we will file a derivative lawsuit on behalf of the Club without further notice. Should you wish to discuss this further, please feel free to contact the undersigned upon his return on May 3.

Finally, please note that neither Rosen nor any other past or current member can recover one dime in damages against Abrams. Rather, any dime recovered goes to the Club. And if, on the face of all expenses of a derivative action, here too, win or lose, it costs the Club not one dime; all such charges are on the account of the purported member and only if they prevail can they look to recover them. Simply put, this is not Rosen suing the Club, not Rosen suing Abrams, but only Rosen suing Abrams on behalf of and for the exclusive benefit of the Club.