UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

APPEAL CASE No. 15-22380-KMM
LOWER TRIBUNAL CASE NO. 13-14289-RAM

---

SAMUEL D. ROSEN,
APPELLANT,

V.

THOMAS L. ABRAMS
APPELLEE,

ON APPEAL FROM ORDERS OF THE U.S. BANKRUPTCY COURT,
SOUTHERN DISTRICT OF FLORIDA

---

## THOMAS L. ABRAMS' OPPOSITION TO SAMUEL D. ROSEN'S MOTION TO DISQUALIFY

Appellee, Thomas L. Abrams files this his opposition to "Appellant, Samuel D. Rosen's Motion to Disqualify Gamberg & Abrams P.A." [DE 15] and states:

1. The Chapter 11 case of the Fort Lauderdale Bridge Club, Inc. was filed on February 26, 2013 [ECF 1].

2. On February 27, 2013, the Debtor, The Fort Lauderdale Bridge Club, Inc. filed its Application to employ Gamberg & Abrams and Thomas L. Abrams as bankruptcy counsel. The Application was granted on a final basis after notice and hearing on April 4, 2013, *nunc pro tunc,* to the Petition date [ECF 24].

3. By Agreed Order, a Trustee was appointed on May 10, 2013 [ECF 63] and a Successor Trustee was appointed on August 14, 2013 [ECF 240].

4. The history of this case is well chronicled in the bankruptcy docket, including the

Settlement Agreement dated May 1, 2014 [ECF 1089] and Second Amended Plan approved on February 25, 2015 [ECF 1325]. The Second Amended Joint Disclosure Statement [ECF 1286] and the Second Amended Plan, both approved by the Court, provide a detailed and concise summary of the case.

5. Subsequent to approval of the Settlement Agreement, (Mr. Rosen received his $75,000.00) the Second Amended Plan was confirmed and closing of the bankruptcy case, Mr. Rosen served a hand written demand on the Bridge Club (signed only by himself) on his behalf and purportedly on behalf of certain other members - past and current of the Bridge Club to bring a "derivative" action against the undersigned for alleged "malpractice" relating to alleged actions taken during the undersigned's Chapter 11 representation of the Bridge Club ("Demand Letter").[1] In response, the undersigned filed a Motion to reopen the bankruptcy case in order to file a Motion to Enforce the Settlement Agreement as to Samuel D. Rosen [ECF 1343] and a Motion to Enforce the Plan and Confirmation Order [ECF 1344].[2] These Motions were set for hearing and granted by the bankruptcy court [ECF 1350 and 1351]. Mr. Rosen appealed both Orders.

6. Because Mr. Rosen had already released all claims against the undersigned pursuant to the Settlement Agreement, the Motion to Enforce the Settlement Agreement was filed as to Mr. Rosen. Pursuant to the Settlement Agreement, Mr. Rosen released and waived all claims against the Bridge Club and was to have no further involvement with the club. Accordingly, there was no need to enforce the Plan as to Mr. Rosen or seek any other relief as he had no standing. That is the reason Mr. Rosen was not in any way part of the bankruptcy or Plan Confirmation process and the reason he

---

[1] A true and correct copy of the hand written demand is attached hereto as Exhibit "A".
[2] Mr. Rosen released all claims and therefore had no standing or interest in the Motion to Enforce the Plan and Confirmation Order. These are issues for determination on appeal.

2

did not attend or participate in the hearing on the Motion to Enforce Second Amended Plan and Order Confirming Second Amended Plan. Of course, Mr. Rosen claims to the contrary.

### Memorandum of Law

7. The Motion filed before this Court is patently frivolous in all respects and is filed for improper purposes. First, the Motion relies solely on a pleading filed in the bankruptcy court which was denied. Mr. Rosen never raised the issue of disqualification during the several years the Bridge Club case was pending and did not raise the issue in opposition to the Motions which are the subject matter of the pending appeals.[3] Mr. Rosen cannot properly raise this issue for the first time on appeal as there is no record and any such assertion was waived and is res judicata and collaterally estopped based on the Settlement Agreement, Confirmed Plan and orders in the bankruptcy case.[4] The undersigned has the right to select his own counsel and disqualification is a drastic measure which a court should not impose unless absolutely necessary. *In re Jet 1 Center, Inc.*, 310 B.R. 649, 654 (M.D. Fla. 2004); *First Impressions Design & Management, Inc. v. All That Style Interiors, Inc.* 122 F. Supp. 2d 1352, 1355 (S.D. Fla. 2000) (denying disqualification of a party's chosen counsel for appearance of impropriety, stating that "disqualification of a party's chosen counsel is an extraordinary remedy not generally in the public interest- a remedy that should be employed only sparingly "and the party seeking disqualification carries a heavy burden and must meet a high standard of proof before an attorney is disqualified"). Mr. Rosen has not met any standard as his Motion is baseless.

---

[3] A notice of appearance was filed as the undersigned was for some unknown reason the undersigned was listed on the appeal as pro se and was not receiving pleadings via ECMF. The Motions subject to appeal were filed with Gamberg & Abrams firm name as counsel.

[4] Mr. Rosen previously issued a subpoena to the undersigned as a General Partner of Gamberg & Abrams. See ECF 463 and Exhibit "C" thereto.

3

8.      Second, the structure and manner of operation in utilizing a fictitious named owned by lawyers P.A.'s is a common and proper structure in the State of Florida. The documents attached as public records show same as Gamberg & Abrams has been utilized in state, federal and bankruptcy court's since 2003. Mr. Rosen's assertion that somehow the partnership arrangement between Thomas L. Abrams P.A. and Jay M. Gamberg P.A operating under the fictitious name of Gamberg & Abrams is improper is frivolous.[5] Mr. Rosen provides no authority for his contention as none exists. Lawyers in Florida utilize various alternative structures for their practices. In fact, the Florida Bar rule of professional conduct to which Mr. Rosen cites, 4-7.21, is completely contrary to his contention and expressly provides for use of trade names, fictitious names and law firms operating in multiple jurisdictions (both Gamberg & Abrams practice in Broward County and throughout South Florida). See 4-7.21 (b) (c) (d). Mr. Rosen's assertions are nonsensical.

9.      The other assertions made by Mr. Rosen are completely contrary to the record of this case and have no bearing on alleged disqualification of Gamberg & Abrams. Rather, they are improvidently designed to attempt to prejudice this Court against the undersigned and preview Mr. Rosen's ill fated arguments on appeal. Mr. Rosen's contentions are either res judicata and /or collaterally estopped as a matter of law or are arguments which it is assumed he will make on appeal and is seeking to argue at this time. All of the contentions, however irrelevant to this motion, are false, scandalous, materially inaccurate and contrary to the record below. A record which Mr. Rosen brazenly refuses to acknowledge as binding.

10.     Mr. Rosen has ill advisedly filed his Motion to Disqualify for improper purposes. In

---

[5] Mr. Rosen attaches irrelevant documents relating to a former firm which Jay Gamberg was involved in back in the 1990's and was dissolved on October 16, 1998. The fact that Mr. Gamberg utilized a different structure for operation of his law practice through 1998 is irrelevant.

4

addition to the grossly obvious attempt to poison the well, Mr. Rosen erroneously appears to believe that if Gamberg & Abrams is disqualified that the undersigned will be unable to recover attorney's fees in representing himself on appeal in the event of an adverse ruling. Accordingly, Mr. Rosen is desperately seeking to accomplish such goal even though it is completely baseless as a matter of fact and law.[6] Mr. Rosen's Motion should be denied.[7]

Dated: September 10, 2015.

Respectfully submitted,

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court of the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

GAMBERG & ABRAMS
*Attorneys for Thomas L. Abrams*
1776 North Pine Island Road, Suite 215
Fort Lauderdale, Florida 33322
Telephone: (954) 523-0900
Facsimile: (954) 915-9016
E-mail: tabrams@tabramslaw.com

By: /s/ Thomas L. Abrams
Thomas L. Abrams, Esquire
Florida Bar No. 764329

---

[6] Mr. Rosen disrespectfully admonished Judge Isicoff in an Affidavit he filed after she ruled that he had breached the Settlement Agreement and awarded attorney's fees [ECF 1391] asserting she should know that an attorney representing himself cannot recover attorney's fees. Beside the fact that Mr. Rosen waived such argument by not timely raising it, the law in Florida which governs the Settlement Agreement (and Federal law) clearly allow for an attorney representing himself to recover attorney's fees. The case relied upon by Mr. Rosen in his "Affidavit" is interpreting the Federal Civil Rights Statute and has been limited to that statute.

[7] This is not a new tactic of Mr. Rosen. He sought to disqualify the Successor Chapter 11 Trustee and his counsel, the Bridge Club's state court counsel in the state court litigation, and has sought to recuse each judge in the underlying case (aside from the recently appointed Judge Mark) as well as suggesting this Court should recuse. Mr. Rosen, however, does not get to pick his opposing counsel or the presiding Judge.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document(s) was/were served this 10th day of September, 2015, via electronically through CM/ECF Notice of Electronic Filing to Gloria Ezrin and Samuel D. Rosen via their attorney, Douglas C. Broeker, and to all parties registered to receive notice and/or via U.S. Mail as noted to all parties on the attached Service List:

By: /s/ Thomas L. Abrams
Thomas L. Abrams, Esquire
Florida Bar No. 764329

## **SERVICE LIST**

*Notice via U.S. Mail:*
The Fort Lauderdale Bridge Club
700 NE 6th Terrace
Ft. Lauderdale, FL 33304

By: /s/ Thomas L. Abrams
Thomas L. Abrams, Esquire
Florida Bar No. 764329

Case 1:15-cv-22380-KMM Document 21 Entered on FLSD Docket 09/10/2015 Page 7 of 10
Case 1:15-cv-22380-KMM Document 19 Entered on FLSD Docket 09/08/2015 Page 8 of 11
Case 13-14289-LMI Doc 1343 Filed 05/22/15 Page 38 of 47

07 15 05:38p    S Rosen                                        305868906          p.2

M581

4/2/15

to: Jesse Laird, Manager, Ft. Lauderdale Bridge Club
700 Nonflower Terrace
Ft. Lauderdale, FLA. 33304

From: Stanley Rosen

Jesse, please photostat this letter and distribute copies to all Board Members ASAP. Thank you. Stanley.

to: the Members of the Board

Pursuant to Ch. 617.07401, Fla. Statutes, demand is hereby made on behalf of the undersigned and certain other members — past and current — to initiate action to recover from Thomas Abrams all damages occasioned by his wrongful conduct, including:

(1) Negligence in advising the Club to file a bankruptcy petition without at least first attempting to settle disputes with SE.

(2) Demanding and receiving from Thom-Mogelar Bozek a form of Retainer Agreement containing a "fully earned when paid" clause in violation of Rule 4-1.5(e), Fla. Rules of Professional Conduct.

(3) Filing a bankruptcy petition which is erroneous, includes, e.g., omitting almost $600,000 in non-exempt assets which are listed on the Club's

EXHIBIT "A"

Case 1:15-cv-22380-KMM   Document 21   Entered on FLSD Docket 09/10/2015   Page 8 of 10
Case 1:15-cv-22380-KMM   Document 19   Entered on FLSD Docket 09/08/2015   Page 9 of 11
Case 13-14289-LMI   Doc 1343   Filed 05/22/15   Page 39 of 47

07 15 06:38p    S Rosen                                           305868908        p.3

page 2

tax Return, filed 9 days earlier, on February 17, 2013 and covering the period ended December 31, 2012;

(4) Refusing to withdraw or amend the Ch. 11 Petition even when confronted with its errors;

(5) Acting without authorization of the Board ad hoc to approach Judge Ray when, on April 16, 2013, agreeing with Judge Ray that a Trustee could be appointed;

(6) Then proceeding to file a motion for appointment of a Trustee on April 19 without disclosing to the Board that he had already agreed to do so and the costs of same (note, for the 2+ months that Welt was the Trustee, the union fees approximately totaled $100,000);

(7) Filing a Final Fee App. in May, 2013 seeking $38,000 ($8,000 more than the $30,000 retainer payment) which indicated that Attorney Spear &/or Crew working alone for 19 hours to prepare the Bankruptcy Filing of the total 2v hours from his Retention at about 6:30 pm, Tuesday 2/5, to the Filing at 4pm on February 26;

(8) Aaron repeatedly representing to the Court after the Trustee appointment that his ongoing services were Pro bono, that he would not charge charge

Case 1:15-cv-22380-KMM Document 21 Entered on FLSD Docket 09/10/2015 Page 9 of 10
Case 1:15-cv-22380-KMM Document 19 Entered on FLSD Docket 09/08/2015 Page 10 of 11
Case 13-14289-LMI Doc 1343 Filed 05/22/15 Page 40 of 47

[40]

the Clients can. Then, Abrams supervised another fee application which the new Bankruptcy Judge granted, and

(7) Filing a motion, not a front for the new trustee, mon, for the court to authorize solicitation of contributions from members, ostensibly for the Club's benefit, without disclosing that if a plan of Arrangement were not reached, i.e. the Club was liquidated — p-t out of business — the contributions would *not* be returned to the members, but rather would go to the trustee and his law firm.

(8) The magnitude of Abrams' misconduct and negligence is that separate and apart from fees to Weiss and his entourage and to Abrams himself, the Court has allowed almost $1.5 million in fees and expenses to trustee Tabas and his entourage when as late as April 18, the Club could have settled with Rojon for less than $200,000, all or most of which to be paid by the Club's insurance carrier.

Any rational, objective person looking at these facts could not help but conclude that Abrams' conduct and his advices to save the Club turned out to be an unmitigated disaster, indeed, perhaps the biggest case of misconduct/negligence in bankruptcy Annals.

p.4

Pursuant to Ch. 617.07401, you have 90 days to take action, following which we will file a derivative lawsuit on behalf of the the Club without further notice. Should you wish to discuss this matter, please feel free to contact the undersigned upon his return on May 3.

Finally, please note that neither Rosen nor any other past or current member can recover any dime in damages against Abrams, Britton, over any recovered sums to the Club. And as for the fees and expenses of a derivative action, here too, while on note, it costs the Club not one dime — all such charges are for the account of the purported member and only if they prevail can they look to recover them. Simply put, this is not Rosen suing the Club, not Rosen suing Abrams, but only Rosen suing Abrams on behalf of and for the exclusive benefit of the Club.