UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
_____

CIV. ACTION NO.:  15-22380 KMM
Honorable K. Michael Moore

L.T. Case No.: 13-14289-RAM
Honorable Robert A. Mark
_____

SAMUEL D. ROSEN

Appellant,

v.

THOMAS L. ABRAMS

Appellee.
_____

CONSOLIDATED APPEAL FROM ORDERS OF THE
U.S. DISTRICT COURT OF THE SOUTHERN DISTRICT OF FLORIDA

---

**ANSWER BRIEF OF APPELLEE, THOMAS L. ABRAMS**

---

Thomas L. Abrams
Florida Bar No. 764329
tabrams@tabramslaw.com
**GAMBERG & ABRAMS**
1776 North Pine Island Road, Suite 215
Fort Lauderdale, Florida 33322
Telephone:  (954) 523-0900
Facsimile:   (954) 915-9016

Jeffrey B. Crockett
Florida Bar No. 347401
jcrockett@coffeyburlington.com
**COFFEY BURLINGTON, P.L.**
2601 South Bayshore Drive, Penthouse
Miami, Florida  33133
Telephone:  (305) 858-2900
Facsimile:  (305) 858-5261

*Counsel for Appellee, Thomas L. Abrams*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF CITATIONS ..................................................... iii

INTRODUCTION ......................................................... 1

STATEMENT OF THE ISSUES ......................................... 2

STATEMENT OF THE CASE AND OF THE FACTS ............. 2

FACTUAL BACKGROUND .......................................... 3

    Rosen's Demand Letter to the Bridge Club ....................... 7

    The Bankruptcy Court's Rulings ................................... 8

SUMMARY OF THE ARGUMENT ................................. 11

ARGUMENT ........................................................... 13

I.    THE BANKRUPTCY COURT PROPERLY ENFORCED THE SETTLEMENT AGREEMENT ................................... 12

II.    THE BANKRUPTCY COURT'S AWARD OF THE FEES TO APPELLEE AS PREVAILING PARTY WAS CORRECT ........................... 19

III.    THE BANKRUPTCY COURT'S ORDER ENFORCING THE PLAN SHOULD BE AFFIRMED .......................................... 21

    Rosen's Waiver and/or Abandonment of any Right or Standing to Object to and/or Appeal The Order Enforcing Plan ................................... 23

    The Confirmation Order is a Final Non Appealable Order Not Subject to Collateral Attack by Rosen and Release, Bar, Order, Injunction and Related Provisions Therein Were Properly Enforced by the Bankruptcy Court ........ 24

    The Claims Alleged in Demand Letter are Res Judicata as to Debtor and Trustee and are Therefore not Subject to any Type of Indirect or Derivative Claim by Third Parties .................................................. 29

CONCLUSION ......................................................... 32

i

CERTIFICATE OF COMPLIANCE.........................................................................33

CERTIFICATE OF SERVICE ..............................................................................34

SERVICE LIST.......................................................................................................35

COFFEY │ BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

# TABLE OF CITATIONS

**Page**

**Cases**

*Access Now, Inc. v. Southwest Airlines Company*,
   385 F.3d 1324 (11th Cir. 2004) .......................................................... 17, 19-20, 21

*Albritton v. Ferrera*,
   913 So. 2d 5 (Fla. 1st DCA 2005) ....................................................................19

*AXA Equitable Life Insurance Company v. Gelpi*,
   12 So. 3d 783 (Fla. 3d DCA 2009)....................................................................16

*Bayshore Royal Co. v. Doran Jason Co. of Tampa, Inc.*,
   480 So. 2d 651 (Fla. 2d DCA 1985)..................................................................18

*Blair v. Blair*,
   319 B.R. 420 (Bankr. D. Md. 2005)..................................................................29

*Carter v. Rodgers,*
   220 F.3d 1219 (11th Cir. 2000)…………………………………………………25

*Friedman v. Backman*,
   453 So. 2d 938 ( Fla. 4th DCA 1984) ...............................................................19

*Grausz v. Englander*,
   321 F. 3d 467 (4th Cir. 2003) ...........................................................................30

*Hernandez v. Gil*,
   958 So. 2d 390 (Fla. 3d DCA 2007)........................................................... 12, 18

*In re Ernie Haire Ford, Inc.*,
   764 F. 3d 1321 ( 11th Cir. 2014) ......................................................................22

*In re Food Management Group, LLC*,
   380 B.R. 677 (Bankr. S.D.N.Y. 2008) .............................................................26

*In re Morris Publishing Group*, LLC,
   2011 WL 1167180 (S.D. Ga. Mar. 28, 2011)....................................................22

*In re Optical Technologies*, Inc.
   425 F.3d 1294 (11th Cir. 2005) ............................................................ 25, 28, 29

*In re Rimsat, Ltd.*,
   193 B.R. 499 (Bankr. N.D. Ia. 1996) ...............................................................23

iii

*In re Seaside Engineering & Surveying, Inc.*,
   780 F.3d 1070 (11th Cir. 2015) ..........................................................................28

*Kay v. Ehrler*,
   499 U.S. 432 (1991) .........................................................................................20

*Massengale v. Ray*,
   267 F. 3d 1298 (11th Cir. 2001) .........................................................................20

*McClung v. Posey*,
   514 So. 2d 1139 (Fla. 5th DCA 1987) ................................................................19

*Mendez v. Hampton Court Nursing Center, LLC*,
   140 So. 3d 671 (Fla. 3d DCA 2014) ...................................................................18

*Powers v. United States*,
   996 F. 2d 1121 (11th Cir. 1993) .........................................................................17

*Quick & Reilly, Inc. v. Perlin*,
   411 So. 2d 978 (Fla. 3d DCA 1982) ...................................................................19

*Ray v. U.S Department of Justice*,
   87 F. 3d 1250 (11th Cir. 1996) ...........................................................................20

*Security Insurance. Company of Hartford v. Puig*,
   728 So. 2d 292 (Fla. 3d DCA 1999).....................................................................12

*State Farm Mutual Auto Insurance Company v. Lynch*,
   661 So. 2d 1227 (Fla. 3d DCA 1995)...................................................................17

*Vermut v. General Motors Corp.*, Inc.
   773 So 2d 126 (Fla. 4th DCA 2000) ...................................................................12

**Statutes**

   5 U.S.C. §552(a)(4)( E)........................................................................................20

COFFEY │ BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

## INTRODUCTION

This appeal was triggered by a demand letter sent by Appellant, Samuel Rosen, to the Fort Lauderdale Bridge Club, making a demand that the Club sue Appellee Thomas Abrams, its counsel, for "malpractice" in the representation of the Club in bankruptcy proceedings.  The bankruptcy court, Hon. Laurel Isicoff, ruled in one of the three orders at issue here that this demand letter breached a settlement agreement signed by Rosen which had resolved a number of disputes in the course of the Club's bankruptcy reorganization [ECF 1351][1].  In its order enforcing the settlement agreement, the bankruptcy court also awarded Appellee fees as prevailing party, the entitlement of which was not disputed in an amount established without objection  [ECF 1351 and 1371]   The bankruptcy court further found that the Plan, which had already been confirmed, precluded Rosen's demand—a fact acknowledged by Rosen himself at the hearing. [ECF 1350].  The bankruptcy court's rulings were clearly correct, and Rosen's arguments on this appeal baseless.

---

[1] Citations in this case are to the Bankruptcy Court docket numbers [ECF____]. The Appendix required by Federal Rule of Bankruptcy Procedure 8018 was not prepared by Appellant; however, Appellee filed copies of the pertinent items most necessary for this Court's review in an Appendix, served herewith.

1

## STATEMENT OF THE ISSUES

1.      Given the plain, clear and unambiguous language in the Settlement Agreement and specifically the extremely broad and comprehensive General Release provisions therein (Section 7.2) did the bankruptcy court correctly enter its Order Granting Thomas L. Abrams' Motion to Enforce Settlement Agreement? [ECF 1351].  The standard of review on this issue is de novo. *AXA Equitable Life Insurance Company v. Gelpi*, 12 So. 3d 783 (Fla. 3d DCA 2009).

2.      Did the bankruptcy court correctly find Appellee entitled to fees under the prevailing party provision of the Settlement Agreement, particularly given that Appellant made no objection to entitlement? [ECF 1351] The standard of review on this issue is plain error. E.g., *United States v. Flanders,* 752 F.3d 1317, 1332-33 (11th Cir. 2014), *cert. denied,* 135 U.S. 1757 (2015); *Coker v. Amoco Oil Co.,* 709 F.3d 1433, 1437 (11th Cir. 1983).

3.      Does Rosen have lack of standing to appeal the bankruptcy court's Order Enforcing Plan? [ECF 1350]  This is a question of law subject to de novo review. *In re Optical Technologies*, 425 F.3d 1294, 1300 (11th Cir. 2005).

4.      Given Rosen's admissions before the bankruptcy court and the plain language of the Plan, was the bankruptcy court correct in interpreting its own order confirming the Plan in its Order Enforcing Plan [ECF 1350].   This issue is reviewed under the deferential "abuse of discretion" standard of review. *In re Optical Technologies*, 425 F.3d 1294, 1300 (11th Cir. 2005).

## STATEMENT OF THE CASE AND OF THE FACTS

This appeal concerns a bankruptcy court order enforcing the terms of a May 1, 2015 Settlement Agreement ("Settlement Agreement")and awarding fees [ECF 1351,1374] and Order enforcing the terms of a confirmed Second Amended Plan of Reorganization of The Fort Lauderdale Bridge Club, Inc. ("Plan") [ECF 1350].

## FACTUAL BACKROUND

The Fort Lauderdale Bridge Club, Inc. ("Bridge Club") is a section 501(c)(7) not for profit Florida Corporation which has operated and managed a highly successful and nationally recognized bridge club since 1958 [ECF 1286].    The Bridge Club had approximately 600 members who, at the time of the bankruptcy filing, each paid $25.00 per year for membership The Bridge Club's value is expressly recognized by The City of Fort Lauderdale in its term lease through 2040 of public property for its use at a nominal $10.60 per year. [ECF 1286, P. 19]. The Bridge Club is managed by an elected Board of Governors who all are volunteers who serve without compensation.   Appellee ("Abrams" or "Appellee") was retained by the Fort Lauderdale Bridge Club, Inc. ("Bridge Club") in late February 2013 to represent the Bridge Club in a Chapter 11 reorganization and a Chapter 11 Petition was filed on February 26, 2013.   Abrams and his firm's retention as counsel for the Bridge Club as Debtor in Possession was duly approved by the Court. [ECF 24].

The bankruptcy filing was caused by the substantial amount of litigation brought by one of its members, Samuel D. Rosen, ("Rosen" or "Appellant") against the club and many of its officers, Board of Governors ("Board") among other club members [ECF 1286 at 13-14] For example, the Bridge Club paid

3

$32,156 to its counsel in just the ninety (90) days prior to bankruptcy [ECF 1286]. The non-profit Club could simply not afford the storm of litigation filed by Rosen.

On April 19, 2013, the Debtor filed an Expedited Motion to Appoint a Chapter 11 Trustee [ECF 50]. The Board believed having a fiduciary with no prior involvement with the Bridge Club act as Trustee would serve the best interests of all parties and preserve resources of the Club as Rosen continued to make accusations of misconduct against board members [ECF 33]. On May 9, 2013, an Agreed Order was entered for appointment of a Chapter 11 Trustee [ECF 61] and in accordance with its statutory duties, the U.S. Trustee's office appointed a Trustee. A motion by Rosen for his removal led to his resignation and Joel Tabas was appointed as the Successor Trustee.[2]

In a familiar pattern, Rosen filed a Motion to remove and sanction the Successor Trustee and his counsel [ECF 1286, pgs. 16 & 17; ECF 556 & 1016], and filed an adversary complaint against the Trustee and his law firm [ECF 1, Adv. No. 13-01884-LMI] seeking damages.

---

[2] At the first hearing the Successor Trustee attended on October 22, 2013, the second Judge on the case, Judge Olsen, denied Rosen's Motion to recuse, but agreed to the reassignment based on Rosen's statements to the Trustee that this would lead to a more conducive posture for resolution. Judge Olsen specifically noted the dozens of otiose motions, objections and appeals filed by Rosen and highlighted his excessive litigation tactics as well as his ex parte communications with two judges [ECF 390].

4

The major developments in the case and specifically the substantial amount of litigation with Rosen are detailed in Section V. B of the Second Amended Disclosure Statement as well as the Settlement Agreement itself. [ECF 1286] At the time of the Settlement Agreement on May 1, 2015, there were six sanctions motions filed against Mr. Rosen (including a Rule 11 Motion filed by Appellee [ECF 731] and a request for a Martin-Trigona Injunction [ECF 762])[3] and Rosen had at least five pending sanctions/misconduct motions against the Chapter 11 Trustee and/or his law firm and at least five sanction motions against third parties, including at least four law firms other than Appellee's.  Many of these matters were set for hearing at the time of the Settlement Agreement. Additionally, at the time of the Settlement Agreement, Appellant had five appeals pending of 11 separate bankruptcy court orders. This necessitated the Chapter 11 Trustee to retain another professional, appellate counsel, Dorothy Easley.  All matters and issues relating to Rosen and his counsel Douglas Broeker ("Broeker") were resolved by a Settlement Agreement.

The twenty-five page Settlement Agreement [ECF 1343 at 9-37] was entered into by the various parties, including Rosen, the Successor Trustee, the Bridge

---

[3] The Martin Trigona Injunction Motion was intended to stop or slow Rosen's vexatious litigation tactics. The Trustee joined in the Motion and the court stated she was inclined to grant the motion, but the case was settled prior to the hearing thereon.

5

Club and Abrams on or around May 1, 2014.  The Settlement Agreement was approved by the bankruptcy court, after notice and hearing, on June 2, 2014 [ECF 1097].  The Settlement Agreement had consideration to Rosen including payment of $75,000 and releases of claims against him and his counsel for sanctions, but the provisions pertinent to this appeal are the promises by Rosen.  The first seven pages described the parties to the Settlement Agreement and the "hostilities" between them.  The eighth page said that a "material inducement" to the settling parties was to secure Rosen's agreement to "have no further involvement" with or "hostilities" between Rosen and the Bridge Club and its counsel, including specifically Appellee.  [ECF 1343 at 15].  The Agreement expressly contemplated that the bankruptcy court would approve and retain jurisdiction to enforce the Agreement [ECF 1343 at 17-18].  Section 7 of the Agreement provided that Rosen "remises, releases, acquits, satisfies, and forever discharges" the other parties, including Appellee and the Bridge Club, from "any and all manner of claims, actions, causes of action, suits, debts, sums of money, accounts reckonings, contracts, controversies, agreements, promises, damages and demands whatsoever, in law and equity" which he either "now" or "hereafter" may have, "whether known or unknown, direct or indirect, vested or contingent."  [ECF 1343 at 20-21].  Paragraph 17 of the Settlement Agreement provided that an enforcement action could be filed after ten days notice, and the prevailing party would receive its

6

attorney's fees and costs, including on appeal. [ECF 1343 at 26-27]. Paragraph 18 provided that Rosen was enjoined from "bringing any claims" against the other parties, including Appellee or the Bridge Club and from becoming a member or from participating in bridge games as a member or non-member guest. [ECF 1343 at 27].

After the Settlement Agreement was approved, Rosen also filed a "Verified Motion for Interpretation of the Settlement Agreement" [ECF 1223] asking for permission to pursue still another claim of alleged misconduct against Abrams, but later withdrew the Motion [ECF 1239].

The Successor Trustee proceeded with a Joint Second Amended Plan of Confirmation and Second Amended Disclosure Statement, the Plan resulted in payment and /or satisfaction in full of all creditors, except professionals. The professionals agreed to the waiver of a significant amount of fees. Article VII of the Plan shows the substantial amount of fees related to the case, most of which related to dealing with Appellant and pre-dated the approval of the Settlement Agreement. The Chapter 11 Trustee's legal and Trustee fees exceeded $1,400,000.00 and he agreed to a reduced payment of approximately 32% of such amount. The Trustee's Appellate lawyer, Dorothy Easley, was awarded over

7

$152,000 solely relating to the Rosen appeals.[4]   In return, the Trustee released any claims against the professionals, including Appellee.  There is no record evidence of the basis for any viable claim against any of the professionals in the first place, but, as is not uncommon in bankruptcy, releases were granted.

The Plan was approved by the bankruptcy court pursuant to a confirmation Order dated February 24, 2015 [ECF 1325] with no objection or opposition by any party.  The bankruptcy court expressly found that the provisions relating to the releases of the professionals were fair and reasonable as to the Bridge Club, which has never objected to them nor raised any claim against its counsel Appellee. Consequently, the confirmed Plan became the equivalent of an agreed final judgment in bankruptcy.

### Rosen's Demand Letter to the Bridge Club

After the Final Decree in bankruptcy was entered on April 3, 2015 [ECF 1336], the case was closed [ECF 1337].  Mere days later, on April 7, 2015, Rosen served a hand written demand letter ("Demand Letter") on the directors of the Bridge Club [ECF 1343 at 38-41].  Appellant stated that "demand is hereby made on behalf of the undersigned and certain other members –past and current – to initiate action to recover from Thomas Abrams all damages occasioned by his

---

[4] Only one familiar with and who has encountered Rosen's litigation tactics and the vexatious nature of same can understand the cost of such endeavor.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

wrongful conduct" in serving as counsel to the Bridge Club in bankruptcy, which was thereafter detailed.  Abrams' challenged actions had been approved by the bankruptcy court, and any claim in relation thereto (which belonged to the Bridge Club) had all been released pursuant to the court-approved Plan.  *See* Approval of Abrams' retention [ECF 24]; Order Appointing Trustee [ECF 61]; Order Denying Rosen's Supplemental Motion to Dismiss [ECF 900]; Order Granting Abrams' Application for Compensation [ECF133], Order Granting Motion for Members to Raise Funds for Costs of Administration of Case and Confirmation Process [ECF 826] and Order Confirming Second Amended Plan which expressly found Chapter 11 was filed by Debtor in good faith [ECF 1325].

## The Bankruptcy Court's Rulings

On April 15, 2015, Appellee served a Notice of Breach of Settlement Agreement upon Appellant providing him ten days to cure the breach by withdrawing the Demand Letter. [ECF 1343 at 42] Rosen did not withdraw the demand letter, and consequently, on May 22, 2015, Appellee filed and served on Appellant his Emergency Motion to Enforce Settlement Agreement Pursuant to Paragraph 17 as to Samuel D. Rosen for Recovery of Attorney's Fees and Costs and/or Contempt [ECF 1343].

Appellee also filed a Motion to Enforce the Second Amended Plan and Order Confirming Second Amended Plan and Release, Exculpation, Injunction and

9

Discharge Provisions [ECF 1344] citing the Plan's release provisions    The
Motions were set for hearing on June 9, 2015.  Notice of the hearing on both
Motions were timely served on Rosen [ECF 1344 & 1346].

 On June 5, 2015, Appellant filed his opposition to the motions [ECF 1349],
which made two frivolous arguments: the bankruptcy court lacked jurisdiction and
that a demand in breach of the agreement did not itself breach the agreement,
because the Bridge Club might have ignored his demand.  On June 9, 2015, a
hearing was held on the Motion to Enforce Settlement Agreement and Motion to
Enforce Plan. [ECF 1374] Rosen "withdrew" his demand at the hearing, stating
that he would never have filed it had he known of the Plan's release terms [ECF
1374, pgs. 43, 44].   The bankruptcy court said that this was "too little too late" and
found that his demand letter was a prohibited "demand" to the Club and to
Appellee under the Settlement Agreement [ECF 1374 pgs. 53, 54] Consequently,
the court granted both of Appellee's motions, found that Rosen breached the
Settlement Agreement and that Abrams was entitled to prevailing party attorneys'
fees as a result.  Rosen made no objection to the entitlement finding.

 On June 12, 2015, the bankruptcy court entered an Order Granting Thomas
L. Abrams' Emergency Motion to Enforce Settlement Agreement Pursuant to
Paragraph 17 As to Samuel D. Rosen and for Recovery of Attorney's Fees [ECF
1351].  The oral ruling on the record at the June 9th hearing   was incorporated into

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

the Order.  On the same date the bankruptcy court also entered an Order Granting the Motion to Enforce Plan [ECF 1350].  Despite Rosen's position at the hearing, on June 24, 2015 and August 4, 2015, respectively, he filed notices of appeal as to both orders and as to the attorney's fee order [ECF 1355,1385], which appeals were ultimately consolidated [ECF 1441].

## SUMMARY OF THE ARGUMENT

Rosen entered into an agreement in which he promised to end any involvement in the bankruptcy case or with the Bridge Club and to end all hostilities with and release the Bridge Club and Appellee, among others.  His demand letter was a patent violation of the plain language of the unambiguous Settlement Agreement, and the bankruptcy court properly so ruled and assessed prevailing party fees against him.  The bankruptcy court also correctly ruled that the release provisions of the confirmed reorganization Plan precluded Rosen's desired derivative suit.

The Order Enforcing the Plan [ECF 1350] should likewise be affirmed. Rosen, having released all claims pursuant to the Settlement Agreement and agreeing  to have no further involvement in the bankruptcy case, clearly has no stranding to object to or seek to collaterally attack the confirmed Plan or object to the Order which interpreted and enforced the Plan. Rosen also withdrew his

11

Demand Letter at the June 9th hearing conceding the futility thereof, and this admission shows the frivolous nature of his appeal.

Assuming Rosen had standing to object to the Order Enforcing the Plan, the bankruptcy court's interpretation and enforcement of her own confirmation order can only be upset if the court abused its discretion.  There was no error, clear or otherwise, as the terms of the final non appealable plan and release /bar order/ injunction provisions therein are also clear and unequivocal. Under the Plan approved by the  Trustee  all claims were released/barred/enjoined and the court found such release under the plan was fair, equitable, necessary and for valuable consideration.    Rosen has no position or justification to now attack the final non appealable plan or the judge's enforcement thereof.

Finally, even assuming the Plan had no release/bar/order/injunction provisions, the type of claims alleged by Rosen which he seeks to have the Bridge Club pursue are res judicata to the Bridge Club as the prior orders of the bankruptcy court including but not limited to the Confirmation Order, preclude any claim against Abrams for such matters. (The court, the Trustee and the Bridge Club praised Abrams' efforts throughout the case).  The orders appealed should be affirmed.[5]

---

[5] First Party, among others, Thomas L. Abrams individually and through Thomas L. Abrams P.A. and Gamberg & Abrams (collectively" G&A") and Joel Tabas in *(footnote continued)*

12

## ARGUMENT

## I.   THE   BANKRUPTCY   COURT   PROPERLY   ENFORCED   THE SETTLEMENT AGREEMENT.

The Settlement Agreement is comprehensive, written in plain and unambiguous language.   The Settlement Agreement provides that it is to be governed by and construed in accordance with laws of the State of Florida applicable to contracts.   *See* paragraph 16 of Settlement Agreement.   The public policy of the State of Florida highly favors settlement agreements and will enforce them whenever possible.   *Hernandez v. Gil,* 958 So. 2d 390 (Fla. 3d DCA 2007); *Sec. Ins. Co. of Hartford v. Puig*, 728 So. 2d 292, 294 (Fla. 3d DCA 1999) ("Settlement agreements are governed by contract rules and are highly favored."). It is well established that where language of a settlement agreement is clear and unambiguous, courts may not indulge in construction or modification, and express terms of the settlement agreement control. *Puig*, 728 So. 2d at 294; *Vermut v. General Motors Corp.*, Inc.  773 So. 2d 126, 128 (Fla. 4th DCA 2000).

In this case, paragraph 7.2 of the Settlement Agreement contains a General Release from Appellant as Second Party to Appellee, the Bridge Club, Chapter 11 Trustee Tabas and his law firm among others as First Parties under the Settlement

---

his capacity as Chapter 11 Trustee of the Fort Lauderdale Bridge Club. Second Party included Rosen, Broeker and Sweetapple, Broeker & Varkas, P.L.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

agreement and Paragraph 7.1 provides a General Release from Appellant and other

First Parties to Appellee.[6]

--------

[6] The releases provided as follows:  7.2 Second Party Release To First Party. Subject to the provisions of paragraph 7.5 below, Second Party and all of those claiming by or through Second Party hereby remises , releases, acquits, satisfies, and forever discharges First Party and their present parent, subsidiary, affiliates or predecessor entities , and any and all of his, her, its and/or their respective past and present officers directors  , agents, attorneys, accountants, insurers, servants, employees, shareholders, members, and partners, and their respective heirs and personal representatives, including but not limited to (i) Successor Trustee and his present attorneys, agents, partners, affiliates, accountants and employees(ii) Debtor (iii) G&A , and its attorneys , agents, accountants and employees (iv) Polenberg and its attorneys, agents, partners, affiliates, accountants and employees (v) Stearns and its attorneys, agents, accountants and employees, all of the foregoing hereunder collectively referred to as the ("First Party Releasees") of and from any and all manner of claims, actions, causes of action, suits, debts, sums of money, accounts , reckonings, contracts, controversies, agreements, promises, damages, and demands whatsoever, in law or equity, which Second Party , hereafter can, shall or may have, against any of the First Party Releasees for, upon, or by reason of  any matter, cause or thing whatsoever, from the beginning of the world to the date of this Agreement, whether known or unknown, direct or indirect, vested or contingent. Without limiting the generality of the foregoing, the Release includes the release of any and all claims , rights, and causes of action whatsoever of any type whatsoever, which relate to , concern or arise in any way from the relationship between First Party and Second Party and Second Party and the Debtor, including but not limited to the occurrences alleged in the Rosen v. Tabas Sanctions Motions and Rosen Third Party Sanctions Motions and any claims for contribution or indemnity; were or could have been raised or asserted against First Party Releasees in the Bankruptcy Case, which were alleged in the Rosen v Tabas Sanctions Motions and Rosen Third Party Sanctions Motions by Second Party, or that could have been brought in the Bankruptcy case or which relates in any way to First Party's representation of or relationship with the Debtor, its related entities, persons or constituents. Notwithstanding the foregoing, each Settling Party expressly excludes form the effect of this Release and does not release the First Party Releases from the terms and conditions of this Agreement.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

Notwithstanding the plain and unambiguous language of the Settlement Agreement and General Release, Rosen served a Demand Letter on the Bridge Club purportedly pursuant to Florida's derivative statute demanding that a claim be brought by the Bridge Club against Abrams for alleged misconduct occurring prior to the time of the release involving Abrams' representation of the Club in the bankruptcy. In response, and in accordance with the Notice provisions in paragraph 17 of the Settlement Agreement, on April 15, 2015, Abrams provided Rosen with the requisite notice of breach of the Settlement Agreement providing him ten days to withdraw his Demand Letter or a Motion to Enforce and request for attorney's fees would be filed with the bankruptcy court. Rosen did not withdraw the Demand Letter within ten days, and so Abrams filed both a Motion to Enforce Settlement Agreement and Motion to Enforce Plan. Rosen filed an opposition which referenced both Motions, primarily asserting lack of jurisdiction and arguing that the General Release did not preclude his Demand Letter which demanded the Bridge Club initiate action for Abrams' alleged wrongful conduct on the ground that the General Release only released "direct claims" by Rosen against Abrams.

As found by the lower court, the plain, clear and unambiguous language of the General Release precludes:

15

> "any demand or claim on Mr. Abrams or to the Bridge club to go after Mr. Abrams. That's my finding. . . . I note for the record that at this hearing you stated you were withdrawing your letter. And to make the record clear, I find that you statement to do so here today is too little too late."

*See* Transcript, June 9, 2015, pg. 54 L. 1-3, L. 7-11 [ECF 1374].

The bankruptcy court was clearly correct as the release precluded Rosen from making any demand to the Bridge Club as to Abrams. Even if the Bridge Club had not released Abrams under the Plan, Rosen had promised not to make the "demand" he made.

Additional plain language of the General Release goes on to further ensure that the type of demand Rosen issued was released. Specifically, the General Release further provides that:

> **"Without limiting the generality of the foregoing, this Release includes the release of any and all <u>claims</u>, <u>rights</u>, and causes of action of any type whatsoever, which relate to, concern or arise in any way from the relationship between First Party and Second Party and First Party and the Debtor, including but not limited to . . . . or that could have been brought in the Bankruptcy Case or which relates in any way to First Party's [Abrams] representation of or relationship with the Debtor, its related entities, persons or constituents."** [Emphasis Added].

Rosen clearly released his "right" to make a derivative demand which relates, concerns or arises out of Abrams representation of or relationship with the Debtor. This plain language of the general release is consistent with the tortured history of his case, which was to buy peace in all regards and end hostilities [ECF

16

1374, June 9, 2015 Transcript; Settlement Agreement, page 8 of 25].[7]   As Judge

Isicoff succinctly stated:

> "Now I don't know what possessed you, Mr. Rosen, to send
> that letter, because I will tell you that one thing was absolutely,
> unequivocally clear is that the purpose of this agreement was that you
> were going to turn your back on everything that happened, get your
> $75,000.00 and move on with your life, focus on your health, focus on
> your family and leave the Fort Lauderdale Bridge Club behind.  And
> on the other side that everybody on this side of the courtroom,
> whether it was Mr. Tabas, Mr. Abrams, the other professionals
> involved, the members of the Bridge Club, they were going to turn
> around and never have anything to do with anybody again.  Peace was
> being bought on all sides . . . . That was the purpose of the settlement.
> Now, notwithstanding that, you felt it was necessary to send a letter
> and start this all over again."

[June 9, 2015 Transcript; ECF 1374, pgs. 49-50].

The bankruptcy court said all that needs to be said to put this matter to rest,

and nothing in Rosen's brief has any persuasive impact.  Rosen's arguments which

seek to distract from his clear breach, are unconvincing and baseless excuses, not

factual or legal.  The Bridge Club's rights against Abrams are not affected by the

Settlement Agreement, which does not excuse Rosen's violation of that

agreement's clear terms as found by the bankruptcy court.  *AXA Equitable Life*

*Insurance Company v. Gelpi*, 12 So. 3d 783 (Fla. 3d DCA 2009) (language of

general release which provides "including but not limited to" does not limit the

---

[7] The Bridge Club's Chapter 11 was brought primarily to cease the onslaught of
actions, including "derivative" actions brought by Rosen and allow the Bridge
Club to operate without such constant demands.

17

general release to those causes of action specifically listed); *State Farm Mut. Auto Ins. Co v. Lynch*, 661 So. 2d 1227 (Fla. 3d DCA 1995) (holding that language in a release "and includes…" does not limit the release to those damages listed). "Derivative" claims are included in the broad term "all" claims as well as direct and "indirect" claims, and the fact that release may in general be an affirmative defense does not excuse Rosen from breaching the Settlement Agreement or violating the injunction contained in the Settlement Agreement. This argument was not raised in the court below and accordingly, was waived.    While an appellate court may affirm on any ground whether or not such ground was even considered or relied upon by the court below, *Powers v. United States*, 996 F. 2d 1121 (11th Cir. 1993), an appellant may only rely on issues raised in the court below. *Access Now, Inc. v. Southwest Airlines Company*, 385 F. 3d 1324, 1331 (11th Cir. 2004).

Moreover, this contention is nonsensical as the subject settlement agreement expressly provided for enforcement in the bankruptcy court in paragraphs 17 and 18.  The fact that Rosen did in fact withdraw his Demand Letter at the June 9th hearing in no way excused his breach, rather, it would have only served to mitigate the damages from his breach had he not subsequently continued his position that he had not breached and appealed the Order finding him in breach.

Rosen also argues for the first time on appeal that the Settlement Agreement is void against public policy.  This contention is frivolous under Florida law where

settlements are favored and freedom of contract reigns. *Hernandez*, 958 So. 2d 390; *Mendez v. Hampton Court Nursing Center, LLC,* 140 So. 3d 671 (Fla. 3d DCA 2014) (holding that parties are free to enter into contracts as they see fit); *Bayshore Royal Co. v. Doran Jason Co. of Tampa, Inc.,* 480 So. 2d 651 (Fla. 2d DCA 1985) (holding that it is settled law that a mere peppercorn of consideration is sufficient.) Additionally, Rosen's argument that the Settlement Agreement and General Release violate public policy was not raised in the court below and accordingly was waived.  The Settlement Agreement stands on its own right and as set forth above, Rosen released his right to assert a direct or indirect demand as to Abrams or any "rights", claims, causes of action whatsoever which relate in any way to Abrams' representation or relationship to the Bridge club, its related entities, persons or constituents.  The issues raised by Rosen as to the Plan and releases therein is likewise a false issue and is addressed below.[8]

## II.   THE BANKRUPTCY COURT'S AWARD OF FEES TO APPELLEE AS PREVAILING PARTY WAS CORRECT.

Rosen failed to object to Abrams entitlement to attorneys' fees before the court below and therefore waived any argument in opposing entitlement.[9] *Access*

---

[8] Appellant admits he released all claims and has no standing whatsoever as it relates to the confirmed plan, however, his arguments will be addressed below.

[9] Appellant only objected to the amount of the award [ECF1365] which was overruled by separate order also on appeal [ECF 1371].

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

*Now, Inc.*, 385 F. 3d at 1331.  The bankruptcy court also noted same in her order awarding the amount of fees [ECF 1371].  In any case, the application of the prevailing party fee provision is clear here and entitles Abrams to fees both in the bankruptcy court and on appeal, both for his own time and for additional counsel. *Albritton v. Ferrera*, 913 So. 2d 5 (Fla. 1st DCA 2005) (In a frivolous suit against a lawyer, he is entitled to attorney's fees for his time and effort under §57.105, just as he is for services he employs to represent him); *Friedman v. Backman*, 453 So. 2d 938 ( Fla. 4th DCA 1984) (Noting that awarding fees for self-representation is "Logical because as the saying goes 'a lawyer's time and advice are his stock in trade' "); *Quick & Reilly, Inc. v. Perlin*, 411 So. 2d 978 (Fla. 3d DCA 1982) (holding that attorney representing himself has the right to recover fees for acting as his own counsel); *McClung v. Posey*, 514 So. 2d 1139 (Fla. 5th DCA 1987) (holding that attorney's fees should be awarded to attorney representing himself if fees would be recoverable by same party if represented by independent counsel).

The case law relied upon by Rosen is inapposite and has no bearing on the issue presented in this appeal. The *Massangale v. Ray*, 267 F. 3d 1298 (11th Cir. 2001) concerned an interpretation of Rule 11 in relation to a pro se litigant attorney who successfully obtained relief for Rule 11 sanctions. While the Eleventh Circuit upheld the sanctions, it held that based on the express language of the Rule 11

statute, a pro se attorney litigant could not have incurred attorney's fees as an expense.[10]

The fees in this case were awarded based on the prevailing party provision of the contract, which mooted the need to invoke Rule 11. For the same reason, the federal decisions of *Kay v. Ehrler*, 499 U.S. 432 (1991) (pro se attorney not entitled to fees under 42 U.S.C. §1988) and *Ray v. U.S Dep't of Justice*, 87 F. 3d 1250 (11th Cir. 1996) (applying fee shifting terms of FOIA, 5 U.S.C. §552(a)(4)( E)) are inapposite.

Florida law governs the contract at issue and is clear that an attorney representing himself is entitled to recovery of attorney's fees for the time incurred as a prevailing party in a contract dispute. There is no counter vailing public policy under Florida law in contract disputes with a fee provision.

Finally, Rosen did not address any issue as to the order which determined the amount of fees [ECF 1371] and accordingly he abandoned such issue on

---

[10] It is unclear whether the Eleventh Circuit's decision would be the same under the circumstances of this case wherein Appellee is represented by his firm but as a member of the firm is performing all of the work himself. While such issue may have import if this Court enters Rule 11 Sanctions and Appellant seeks attorney's fees for the work he performed as an element of the sanctions, such issue is not relevant here.

21

appeal.[11] *Access Now, Inc.*, 385 F. 3d 1324. The bankruptcy court was within its discretion in awarding fees based on an uncontradicted submission by Appellee.

## III.   THE BANKRUPTCY COURT'S ORDER ENFORCING THE PLAN SHOULD BE AFFIRMED.

### Rosen's Lack of Standing

Abrams' Motion to Enforce the Plan was a direct result of Rosen's Demand Letter.  The Bridge Club appeared at the June 9, 2015 hearing through its President and did not object in any way object to the relief sought by Abrams, and of course has not appealed the ruling.[12]

Based on the fact that the Confirmed Plan released Abrams from any claims by the Bridge Club, Rosen conceded in his brief and the June 9, 2015 hearing he could not possibly seek relief by or through the Bridge Club, derivatively or otherwise and accordingly he lacks standing and his relief sought is moot.

As part of the Settlement Agreement Rosen was paid $75,000.00 and was released from all claims by the Bridge Club (and others) and in exchange he released all claims against the Bridge Club, agreed he had no interest in the

---

[11] The appeal of ECF 1371 was consolidated into this appeal, *see* [ECF 1441].

[12] The bankruptcy court found that the Bridge Club received notice and advised the Bridge Club's President at the hearing that if it had any objection to the relief being granted it should retain counsel and move for rehearing. [ECF , 1374, Transcript, P 60, L 1-11].

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

remainder of the bankruptcy process as he was no longer a creditor, member or interested party and was not to participate in the bankruptcy.

Accordingly, Rosen has no standing to object to or appeal the Order Enforcing the Plan. *In re Ernie Haire Ford, Inc*., 764 F. 3d 1321 (11th Cir. 2014). He is not an "aggrieved" person as he cannot claim any direct, adverse or pecuniary effect on his rights – **each** of which is required to create standing. *Id.* Under this standard, standing will generally not exist to marginal parties involved in the bankruptcy proceedings who, even though may be exposed to some potential harm incident to the bankruptcy court's order, are not directly affected by that order. *In re Morris Publishing Group*, LLC, Nos. 10-10134 (JSD), CV 110-056, 2011 WL 1167180 (S.D. Ga. Mar. 28, 2011).

Rosen, having settled all of his claims with the Bridge Club, no longer being a creditor, member or any type of party in interest, and having expressly agreed that he had no further involvement in regard to the bankruptcy case, had no standing to object to confirmation of the plan, and clearly has no standing to object to the Order Enforcing the Plan.  The fact that Rosen asserts he served the Demand Letter on behalf of others is of no avail as it does not on any way confer standing to him or others.  *In re Rimsat, Ltd.*, 193 B.R. 499, 503 (Bankr. N.D. Ia. 1996) (party in interest standing requires direct legal interest, pre-petition receiver lacked standing based on assertion he was seeking to protect the rights of others).  In this

23

case, Rosen asserts he is seeking to protect the rights of the Bridge Club, but irrespective of his motive this does not confer standing upon him.  Rosen clearly lacks standing to appeal or object to the Order Enforcing the Plan.

### **Rosen's Waiver and/or Abandonment of any Right or Standing to Object to and/or Appeal The Order Enforcing Plan.**

Rosen expressly excused himself from the hearing on the Motion to Enforce Plan as he appropriately stated on the record when the hearing on such motion was set to commence as follows:

> MR ROSEN: Excuse me, can I leave? I'm not on this one.
> THE COURT: Yes, you may be excused Mr. Rosen.[13]

No one asked him or told him to leave.

Rosen had received service of the Motion to Enforce [ECF 1344] and Notice of Hearing thereon as he stated same in his Opposition in regard to the Motion to Enforce [ECF 1349], but no specific objection was raised in regard to the Motion to Enforce Plan nor could he raise one. Rosen's main objection was jurisdictional which he does not raise in this appeal.  Rosen waived and/or abandoned any appeal of and objection to the Order Enforcing the Plan.

---

[13] The Court did not request that Mr. Rosen excuse himself as suggested in Appellant's "facts", he requested to leave and the court advised him that he may be excused.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

**The Confirmation Order is a Final Non Appealable Order Not Subject to Collateral Attack by Rosen and Release, Bar, Order, Injunction and Related Provisions Therein Were Properly Enforced by the Bankruptcy Judge**.

Even assuming Rosen did not waive and/or abandon his right to object to the Order Enforcing Plan and had standing to Object to the Order Enforcing the Plan, the Confirmation Order and Plan provisions incorporated therein are clear and unambiguous and preclude any claims to be made by or through the Bridge Club as a result of the Release, Bar, Exculpation Injunction and related provisions therein.

The bankruptcy court correctly held that the Plan "clearly and unequivocally releases Thomas L. Abrams, among other professionals and individuals, from any and all claims that were or could have been asserted based upon, arising out of, under , or in connection with, or in any way involving, directly or indirectly, the Chapter 11 case"[14] and that the Confirmation Order shall serve as a bar and enjoin any and all claims against the Released Parties, which includes Abrams for alleged claims up until and through the date of confirmation. *See* 9.6, 9.8, 9.9 of Plan and paragraphs 14, 15 and 16 of the Confirmation Order.  The bankruptcy court made express findings that the  release, exculpation, bar and Injunction provisions were

_____

[14] This ruling leaves aside that there is no factual basis for any malpractice claim and the hurdle provided by the "Barton" doctrine, see, e.g., *Carter v. Rodgers,* 220 F.3d 1219 (11th Cir. 2000), which requires court approval of actions against court-approved professionals.

25

fair and equitable, given for valuable consideration, in the best interests of the Debtor and its Chapter 11 Estate, and such provisions shall be binding on all persons and entities. See paragraph 14 of Confirmation Order [ECF 1325].

Based on the plain language and findings of fact in the Plan as incorporated in the Confirmation Order, the bankruptcy judge held that "Based on the Plan and Confirmation Order, such claims [those alleged in the Demand Letter] are barred, released and permanently enjoined and shall not be brought by The Fort Lauderdale Bridge Club, Inc. directly or by any persons (including former or current members of the Fort Lauderdale Bridge Club, Inc.) claiming by or through the Fort Lauderdale Bridge Club, Inc. directly or indirectly." [ECF 1350].

The bankruptcy court's order interpreting and/or enforcing her own confirmation order may be only set aside as it is clearly erroneous. *In re Optical Technologies*, Inc. 425 F. 3d 1294, 1300 (11th Cir. 2005). The order enforcing the Plan is appropriate and in no way erroneous, let alone clearly erroneous.

The Order was limited to claims brought directly by the Bridge Club or persons claiming by or through the Bridge Club. Nothing in the Order concerned any direct claims by any third persons as incorrectly asserted by Rosen in his brief. To the contrary, the Order was in response to the Demand Letter and claims

26

alleged therein which related solely to alleged derivative relief which by its terms must be brought by or through the Bridge Club.[15]

Rosen conceded at the June 9th hearing and in his brief that the Bridge Club having Released Abrams, among others, there is no possible derivative claim, yet Rosen has proceeded with this appeal.

Despite Rosen's admissions, the plain language of the Plan and his lack of standing, Rosen contends that the type of claims alleged in his Demand letter which he characterizes as malpractice claims cannot be barred or released under the Plan and Confirmation Order.  Of course, this is not the case and Rosen provides no support for such proposition.  Appellant's reference to paragraph 9.7 of the Plan is without merit as it relates solely to the Exculpation provision of 9.6, not the Settlement, Release and Bar Order of 9.8 and Injunction provisions in 9.9 of the Plan. Moreover, Section 9.7, relating to exculpation, simply requires conformance with 4-1.8 (h).[16]  The Successor Trustee had every right to exercise

---

[15] The claims are set forth in the Demand Letter expressly states that it is seeking solely derivative relief through the Bridge Club.

[16] This was not an issue to Appellee as the Chapter 11 Trustee, by operation of law, owned all claims (pre and post-petition) released under the Plan as he stepped in the shoes of the Debtor and was the sole authority to release claims and did so utilizing his business judgment.  *In re Food Management Group, LLC*, 380 B.R. 677 (Bankr. S.D.N.Y. 2008). The Successor Trustee was represented by counsel and he made all such decisions for and on behalf of the Debtor.  As with the untold number of ethical violations alleged by Appellant against Appellee, other lawyers, *(footnote continued)*

27

his business judgment to provide releases under the Plan, including the release of alleged malpractice claims against Abrams.

Pursuant to Paragraph 9.8 of the Plan, Settlement, Release and Bar Order Abrams and other Released Parties, based on due and valuable consideration, the confirmation order and Plan served to " bar and enjoin any and all claims….that were or could have been asserted, based on, arising out of, under, or in connection with, or in any way involving, directly or indirectly, the Chapter 11 case, including all claims that were or could have been asserted by shareholders, creditors, parents, subsidiaries and affiliates of the Debtor." [ECF 1286, pg. 60 of 66, 9.8 of Plan].

The Trustee made the business judgment that having settled with Rosen pursuant to the Settlement Agreement, and all other non-professional creditors being paid 100%, the Plan provisions were fair and equitable as there was insufficient funds to pay all professionals 100%. In fact, professionals took a deep discount as reflected in the Plan and Disclosure Statement and found by the bankruptcy court.

---

the Trustee, the judiciary and others, his hysterical allegations are baseless. See Ex 8 D.E.35 finding no probable cause to a plethora of allegations made by Appellant against Appellee to the Florida Bar many of which were raised again in this appeal (despite the no probable cause finding by a committee of lawyers and non lawyers).

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

The Eleventh Circuit has been clear as to the allowance and viability of non-debtor releases in Chapter 11 plans. *In re Seaside Engineering & Surveying, Inc.,* 780 F. 3d 1070 (11th Cir. 2015). Rosen's argument that the exculpation clause violates public policy was not raised below and is without merit based on the confirmed Plan and findings therein. Only Rosen's ambition to keep on litigating is disserved, not public policy. Rosen also ignores the separate release and injunction provisions of the Plan.

In this case, the Plan is final and non-appealable and the bankruptcy judges enforcement and interpretation of her own order is correct, and certainly not clearly erroneous. *In re Optical Technologies, Inc.* 425 F. 3d at 1300 .

The Chapter 11 Trustee exercised his business judgment, the bankruptcy judge confirmed an unopposed plan which paid all remaining claims 100% except for professionals. This was an excellent result which the main antagonist in the case, Rosen, cannot object to as he settled all of his claims, has no standing and in any event waived /abandoned any objections based on his failure to object below.

### The Claims Alleged in Demand Letter are Res Judicata as to Debtor and Trustee and are Therefore not Subject to any Type of Indirect or Derivative Claim by Third Parties.

Even assuming there was no release/bar order and injunction   in the Plan and Rosen had not entered into the subject Settlement Agreement, waived and abandoned his claims, the claims alleged are clearly res judicata as to the Trustee

and Bridge Club based on all of the prior orders of the bankruptcy court, including but not limited to the Order confirming Plan, Disclosure Statement and Affidavits of the Trustee and Debtor Representatives.  Accordingly, no possible claim could be brought against Abrams arising out of the bankruptcy.

The Plan and Confirmation Order expressly found the Chapter 11 was filed in good faith and the Plan proposed in good faith. The bankruptcy court entered orders approving Abrams retention, appointment of the Trustee, denied dismissal of the case based on lack of authority, awarded Abrams fees based on applicable standards, denied removal of the Trustee and granted the motion allowing for club members to form a committee to raise funds to support the reorganization [ECF 24, 61, 133, 729, 826, 853, 900, 1325].[17]

It is well established that an order confirming a Plan and other Court orders constitute a judgment that can be given preclusive effect. *In re Optical Technologies, Inc.*, 425 F. 3d at 1300-1301; *Blair v. Blair*, 319 B.R. 420 (Bankr. D. Md. 2005) (Order awarding fees to Trustees attorney was final order and res judicata as to any alleged malpractice claims arising out of the work performed by

---

[17] Appellant continuously asserted during the case that the Debtor owned real property, however, the Debtor leases its real property from the City of Fort Lauderdale and the public records show that the Debtor owns no real property at the time it filed or thereafter. If the Trustee believed there was a material asset left off the schedules, he would have amended same and accounted for the asset in his monthly reports and plan. This was a frivolous claim and is res judicata.

30

the attorney and settlement agreement barred malpractice claims); *Grausz v. Englander*, 321 F. 3d 467, 472 (4th Cir. 2003)(Principles of res judicata barred malpractice claim based on bankruptcy courts final order awarding fees which necessarily concerned the same operative facts as to the quality and nature of legal services provided to the debtor by the law firm which the court was required to examine in awarding fees). The Plan, Order Awarding Compensation can other court orders clearly preclude any type of claim in the nature alleged in Rosen's Demand Letter[18] by the Trustee (who supported and joined in essentially all of the orders except the initial retention order and appointment of trustee as he was not yet appointed) and the Debtor.

The proposition that a bankruptcy case which was successfully completed to fruition with the business judgment of the Chapter 11 Trustee and Court approval

---

[18] While the Demand Letter is difficult to read, it appears to seek to allege "Malpractice" 1. in allegedly advising the club to file Chapter 11 without first seeking to settle with Mr. Rosen; 2. An allegedly improper retainer agreement; 3. Filing a bankruptcy which is allegedly fraudulent for alleged failure to list assets; 4. Refusing to withdraw or amend the Chapter 11 Petition; 5. Allegedly acting without authority in regard to the appointment of a Chapter 11 Trustee; 6. Seeking authority for appointment of a Chapter 11 Trustee; 7. Complaints about the fee application approved by the Court; 8. Complaints about Abrams allegedly filing a second fee application; 9. Filing a motion for authority for the Bridge Club to raise funds (which was also approved by the Court). Essentially all of the matters were raised by Mr. Rosen in the Chapter 11 case in one form or another. See for example ECF 1223 and attachment "1" thereto.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

does not preclude the alleged "malpractice" claims set forth in the Demand Letter is without factual or legal merit and defies common sense.

## **CONCLUSION**

For all of the above reasons this Court should affirm the bankruptcy Court Orders granting the Motion to Enforce Settlement Agreement and prevailing party attorney's fees [ECF 1351] as well as the amount awarded [ECF1371], reserve jurisdiction for the determination as to the amount of appellate attorney's fees in relation to the Motion to Enforce Settlement Agreement or remand for the bankruptcy court to make such determination and to affirm the bankruptcy court's order Enforcing the Plan and awarding attorney's fees, costs and related damages pursuant Federal Rule of Bankruptcy Appellate Procedure 8020, Federal Rule of Procedure 38, this Court's inherent authority as to frivolous and vexatious litigation relating to this appeal.

Respectfully submitted,

COFFEY BURLINGTON, P.L.
*Counsel for Appellee*
2601 S. Bayshore Drive, Penthouse
Miami, FL 33133-5417
Telephone: (305) 858-2900
Facsimile: (305) 858-5261

By:  /s/ Jeffrey B. Crockett
     Jeffrey B. Crockett, FBN: 347401
     jcrockett@coffeyburlington.com
     vmontejo@coffeyburlington.com
     service@coffeyburlington.com

32

GAMBERG & ABRAMS
*Co-Counsel for Appellee*
1776 North Pine Island Road, Suite 215
Fort Lauderdale, Florida 33322
Telephone:  (954) 523-0900
Facsimile:  (954) 915-9016

By:  /s/ Thomas L. Abrams
     Thomas L. Abrams, FBN: 764329
     tabrams@tabramslaw.com

33

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitation set forth in

FRAP 32(a)(7)(B).  This brief contains 8,914 words.

By:  <u>/s/ Jeffrey B. Crockett</u>

34

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via CM/ECF/Notice of Electronic Filing to all parties registered to receive notice via ECF and via U.S. Mail as noted on the attached service list on this 1st day of December, 2015.

/s/ Jeffrey B. Crockett

35

**Samuel D. Rosen v. Thomas L. Abrams**
**Case No. 15-22380-KMM**

## <u>SERVICE LIST</u>

Douglas C. Broeker, Esq.
Florida Bar No. 306738
SWEETAPPLE, BROEKER & VARKAS, P. L.
44 W. Flagler Street, Suite 1500
Miami, Florida 33130
Tel.: (305) 374-5623/Fax: (305) 358-1023
docservice@broekerlaw.com
doug@broekerlaw.com

*Counsel for Appellant*

COFFEY │ BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261