UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:15-cv-22380

SAMUEL D. ROSEN,

    Appellant,

v.

THOMAS L. ABRAMS,

    Appellee.

_____/

## ORDER AFFIRMING BANKRUPTCY COURT'S ORDERS

This case concerns the appeal of three separate bankruptcy court orders: (1) Order Granting Thomas L. Abrams' Emergency Motion to Enforce Second Amended Plan and Order Confirming Second Amended Plan and Release, Exculpation, Injunction and Discharge Provisions Therein [Bankr. D.E. 1350];[1] (2) Order Granting Thomas L. Abrams' Emergency Motion to Enforce Settlement Agreement and for Recovery of Attorney's Fees and Costs [Bankr. D.E. 1351]; and (3) Order Granting Fees, Overruling Opposition and Determining That Evidentiary Hearing Is Not Necessary [Bankr. D.E. 1371]. For the reasons set forth below, the bankruptcy court's orders are affirmed.[2]

**I.    BACKGROUND**

This appeal was triggered by a demand letter sent by Appellant Samuel Rosen to The Fort Lauderdale Bridge Club, Inc. (the "Bridge Club"), demanding that the Bridge Club sue Appellee Thomas Abrams, its counsel, for "malpractice" in connection with his representation of the Bridge Club in bankruptcy proceedings. The bankruptcy court ruled that this demand letter

---

[1] Citations to this Court's docket are in the form "D.E. [#]," while citations to the bankruptcy court's docket are in the form "Bankr. D.E. [#]."

[2] This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

breached a settlement agreement signed by, among others, Rosen and Abrams, which released Abrams from any and all claims that were or could have been asserted against him based on his representation of the Bridge Club (the "Settlement Agreement"). [Bankr. D.E. 1351]. As a result, the bankruptcy court awarded Abrams attorney's fees and costs as the prevailing party under the Settlement Agreement. [Bankr. D.E. 1351 and 1371]. The bankruptcy court also found that the Second Amended Joint Plan of Reorganization (the "Reorganization Plan" or "Plan"), which had already been confirmed, precluded Rosen's demand—a fact acknowledged by Rosen himself before the bankruptcy court. [Bankr. D.E. 1325].

Rosen appeals all three of the bankruptcy court's orders.

## II. STANDARD OF REVIEW

Two standards of review govern this appeal.

This Court reviews a bankruptcy court's legal rulings de novo and its findings of fact for clear error. *See, e.g.*, *In re Rosenberg*, No. 13-14781, 2015 WL 845578, at *8 (11th Cir. Feb. 27, 2015); *In re Sublett*, 895 F.2d 1381, 1383–84 (11th Cir. 1990); *see also* Fed. R. Bankr. P. 8013. "Under de novo review, [a] Court independently examines the law and draws its own conclusions after applying the law to the facts of the case, without regard to decisions made by the Bankruptcy Court." *In re Brown*, No. 6:08-cv-1517-Orl-18DAB, 2008 WL 5050081, at *2 (M.D. Fla. Nov. 19, 2008) (citing *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir. 2001)).

This Court reviews a bankruptcy court's award of attorney's fees and costs for abuse of discretion. *Broadcast Music, Inc. v. Evie's Tavern Ellenton, Inc.*, 772 F.3d 1254, 1257 (11th Cir. 2014). An abuse of discretion occurs where the lower court misapplies the law or bases its conclusions on clearly erroneous factual findings. *Id*.

**III.     DISCUSSION**

There are three issues before this Court on appeal. First, whether Rosen has standing to appeal the bankruptcy court's ruling that, under the Reorganization Plan, Rosen's claim is "barred, released and permanently enjoined and shall not be brought by The Fort Lauderdale Bridge Club, Inc.[,] directly or by any persons . . . claiming by or through the Fort Lauderdale Bridge Club, Inc.[,] directly or derivatively." [Bankr. D.E. 1350]. Second, whether the bankruptcy court erred in ruling that Rosen breached the Settlement Agreement. [Bankr. D.E. 1351]. Third, whether the bankruptcy court abused its discretion in awarding Abrams $5,320 in attorney's fees and costs as the prevailing party under the Settlement Agreement. [Bankr. D.E. 1371].

**A.     Rosen Lacks Standing To Appeal The Bankruptcy Court's Order That The Reorganization Plan Bars, Releases, And Permanently Enjoins Rosen's Claim**

Rosen lacks standing to appeal the Order Granting Thomas L. Abrams' Emergency Motion to Enforce Second Amended Plan [Bankr. D.E. 1350], where the bankruptcy court ruled that the Reorganization Plan bars, releases, and permanently enjoins Rosen's claim, asserted either directly or derivatively.

Section 9.8 of the Plan expressly provides that the Confirmation Order [Bankr. D.E. 1325], which the bankruptcy court entered on February 24, 2015, shall serve as a bar and enjoin any and all claims against the "Released Parties," which includes Abrams, for alleged claims up until and through the date of confirmation. Sections 9.6 and 9.9 of the Plan further provide for exculpation of Released Parties, including Abrams and his firm, and a permanent injunction as to any claim, including any released or exculpated claim or cause of action against any Released Party. Paragraph 14 of the Confirmation Order provides that the release, injunction, and exculpation provisions in the Plan are fair and equitable and that such provisions were effective

3

and binding on all persons.  Paragraph 15 of the Confirmation Order provides for permanent injunctive relief as set forth in paragraph 9.9 of the Plan.

Based on the plain, clear, and unambiguous language of the Reorganization Plan, Abrams is released from any and all claims that were or could have been asserted based on, arising out of, under, or in connection with, or in any way involving, directly or indirectly, the Bridge Club's Chapter 11 case.  Such claims unequivocally include any direct or derivative actions brought by Rosen against Abrams.[3]

As a result, Rosen lacks standing to appeal the bankruptcy court's order enforcing the Plan.  As the Eleventh Circuit has explained, "The person aggrieved doctrine limits the right to appeal a bankruptcy court order to 'those parties having a direct and substantial interest in the question being appealed.'"  *In re Ernie Haire Ford, Inc.*, 764 F.3d 1321, 1325 (11th Cir. 2014) (internal citations omitted).  The appeals court has held that this doctrine defines aggrieved persons as those individuals who are "directly, adversely, and pecuniarily affected" by a bankruptcy court's order.  *Id*.  "An order will directly, adversely, and pecuniarily affect a person if that order diminishes their property, increases their burdens, or impairs their rights."  *Id*.  Because the Plan clearly and unequivocally releases Abrams, among other professionals and individuals, from any and all claims arising out of or in connection with the Bridge Club's Chapter 11 case, Rosen is not and cannot be an aggrieved party, as he is in no way "directly, adversely, and pecuniarily affected" by the bankruptcy court's order.  As a result, unlike the order confirming the Plan, Rosen does not have standing to appeal the order enforcing the Plan.

---

[3] Rosen's main argument on appeal is that while he is barred from asserting any direct claims against Abrams, he is not barred from making any derivative claims.  This argument is disingenuous and patently frivolous.  At a hearing before the bankruptcy court, Rosen conceded that he could not seek relief by or through the Bridge Club.

Accordingly, Rosen does not have standing to appeal the Order Granting Thomas L. Abrams' Emergency Motion to Enforce Second Amended Plan [Bankr. D.E. 1350]. The bankruptcy court's order is therefore affirmed.

### B. The Bankruptcy Court Correctly Found That Rosen Breached The Settlement Agreement

The bankruptcy court's determination that Rosen breached the Settlement Agreement is a legal ruling subject to de novo review. As shown below, the bankruptcy court correctly ruled that Rosen breached the Settlement Agreement.

Section 7.2 of the Settlement Agreement contains a general release from Rosen, as "Second Party," to Abrams, individually and through Thomas L. Abrams, P.A., Gamberg & Abrams, and the Bridge Club, among others, each as a "Second Party."[4] The release provides as follows:

> 7.2 Second Party Release To First Party. Subject to the provisions of paragraph 7.5 below, Second Party and all of those claiming by or through Second Party hereby remises, releases, acquits, satisfies, and forever discharges First Party and their present parent, subsidiary, affiliates or predecessor entities, and any and all of his, her, its and/or their respective past and present officers directors, agents, attorneys, accountants, insurers, servants, employees, shareholders, members, and partners, and their respective heirs and personal representatives, including but not limited to (i) Successor Trustee and his present attorneys, agents, partners, affiliates, accountants and employees (ii) Debtor (iii) G&A, and its attorneys, agents, accountants and employees (iv) Polenberg and its attorneys, agents, partners, affiliates, accountants and employees (v) Stearns and its attorneys, agents, accountants and employees, all of the foregoing hereunder collectively referred to as the ("First Party Releasees") of and from any and all manner of claims, actions, causes of action, suits, debts, sums of money, accounts, reckonings, contracts, controversies, agreements, promises, damages, and demands whatsoever, in law or equity, which Second Party, hereafter can, shall or may have, against any of the First Party Releasees for, upon, or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date of

---

[4] The Settlement Agreement defines "First Party" to include, among others, Thomas L. Abrams, individually and through Thomas L. Abrams P.A., Gamberg & Abrams, and Joel Tabas, individually and in his capacity as Chapter 11 Trustee of the Bridge Club. The Settlement Agreement defines "Second Party" to include Rosen, among others.

> this Agreement, whether known or unknown, direct or indirect, vested or contingent. Without limiting the generality of the foregoing, the Release includes the release of any and all claims, rights, and causes of action whatsoever of any type whatsoever, which relate to, concern or arise in any way from the relationship between First Party and Second Party and Second Party and the Debtor, including but not limited to the occurrences alleged in the Rosen v. Tabas Sanctions Motions and Rosen Third Party Sanctions Motions and any claims for contribution or indemnity; were or could have been raised or asserted against First Party Releasees in the Bankruptcy Case, which were alleged in the Rosen v Tabas Sanctions Motions and Rosen Third Party Sanctions Motions by Second Party, or that could have been brought in the Bankruptcy case or which relates in any way to First Party's representation of or relationship with the Debtor, its related entities, persons or constituents. Notwithstanding the foregoing, each Settling Party expressly excludes from the effect of this Release and does not release the First Party Releases from the terms and conditions of this Agreement.

[Bankr. D.E. 1343]. As the bankruptcy court correctly found, the plain, clear, and unambiguous language of the general release precludes Rosen from making any demand on the Bridge Club as to Abrams—directly or derivatively. In releasing any and all "rights" of "any type whatsoever" relating to Abrams's representation of the Bridge Club, Rosen relinquished any right he may have had to make a demand on the Bridge Club. Likewise, in relinquishing any and all "claims" of "any type whatsoever" relating to Abrams's representation of the Bridge Club, Rosen relinquished any right he may have had to pursue a derivative action.

Notwithstanding the plain, clear, and unambiguous language of the general release, Rosen served a demand letter on the Bridge Club, demanding that the Bridge Club sue Abrams for alleged misconduct occurring before the time of the release. Rosen's demand letter constituted a clear breach of the Settlement Agreement. As Bankruptcy Judge Isicoff aptly put it:

> Now I don't know what possessed you, Mr. Rosen, to send that letter, because I will tell you that one thing was absolutely, unequivocally clear is that the purpose of this agreement was that you were going to turn your back on everything that happened, get your $75,000.00 and move on with your life, focus on your health, focus on your family and leave the Fort Lauderdale Bridge Club behind. And on the other side that everybody on this side of the courtroom, whether it was Mr. Tabas, Mr. Abrams, the other professionals involved, the members of the Bridge

> Club, they were going to turn around and never have anything to do with anybody again. Peace was being bought on all sides . . . . That was the purpose of the settlement. Now, notwithstanding that, you felt it was necessary to send a letter and start this all over again.

[Bankr. D.E. 1374]. The bankruptcy court said all that needs to be said to put this matter to rest.

Accordingly, the bankruptcy court's determination that Rosen breached the Settlement Agreement is affirmed.

### C. The Bankruptcy Court Did Not Abuse Its Discretion In Awarding Abrams $5,320 In Attorney's Fees And Costs Under The Settlement Agreement

The bankruptcy court's determination that Abrams is entitled to $5,320 in attorney's fees and costs under the Settlement Agreement is reviewed for abuse of discretion.[5] As shown below, the bankruptcy court did not abuse its discretion in awarding Abrams $5,320 in fees and costs.

The bankruptcy court did not abuse its discretion in ruling that Abrams is entitled to reasonable attorney's fees and costs under the Settlement Agreement. Section 17 of the Settlement Agreement provides that in the event any party "brings an action to enforce any of the provision of this Agreement, the prevailing party in any such action shall be entitled to recover, and the losing shall be obligated to pay, the reasonable attorneys' fees and costs incurred in such proceeding, including attorney's fees and costs incurred in any appellate proceedings." Based on the plain, clear, and unambiguous language of the Settlement Agreement, Abrams is entitled to reasonable attorney's fees and costs incurred enforcing the Settlement Agreement before the

---

[5] Abrams argues that this part of the bankruptcy court's order should be reviewed for plain error because Rosen failed to object to Abrams's entitlement to fees. Under plain error or abuse of discretion review, however, the outcome is the same.

bankruptcy court, both for his time and for any additional counsel.[6]  *See, e.g.*, *Albritton v. Ferrera*, 913 So. 2d 5, 10 (Fla. 1st DCA 2005).

Nor did the bankruptcy court abuse its discretion in awarding Abrams $5,320 in attorney's fees and costs.  The requested fees are reasonable in light of the hours expended and the hourly rate charged by Abrams.  *See Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

Accordingly, the bankruptcy court did not abuse its discretion in awarding Abrams $5,320 in attorney's fees and costs, and its order is affirmed.[7]

**IV. CONCLUSION**

For the foregoing reasons, it is ordered and adjudged as follows:

1. The Order Granting Thomas L. Abrams' Emergency Motion to Enforce Second Amended Plan and Order Confirming Second Amended Plan and Release, Exculpation, Injunction and Discharge Provisions Therein [Bankr. D.E. 1350] is affirmed, as Rosen lacks standing to appeal the order.

2. The Order Granting Thomas L. Abrams' Emergency Motion to Enforce Settlement Agreement and for Recovery of Attorney's Fees and Costs [Bankr. D.E. 1351] is affirmed.

---

[6] Pending at this time is Abrams's Motion for Recovery of Contractual Appellate Attorney's Fees and for Damages for Frivolous Appeal [D.E. 66]. The Court will address Abrams's motion by separate order.

[7] The Court rejects Rosen's contention that the Settlement Agreement is void as against public policy. Under Florida law, "settlements are highly favored and will be enforced whenever possible." *Am. Exp. Travel Related Servs. Co. v. Marrod, Inc.*, 637 So. 2d 4, 5 (Fla. 3d DCA 1994) (quoting *BAC Int'l Credit Corp. v. Macia*, 626 So. 2d 1037, 1038 (Fla. 3d DCA 1993) (quoting Robbie v. City of Miami, 469 So. 2d 1384, 1385 (Fla. 1985)).  Nothing about the Settlement Agreement is offensive to public policy, and Rosen's arguments to the contrary are without merit.

3. The Order Granting Fees, Overruling Opposition and Determining That Evidentiary Hearing Is Not Necessary [Bankr. D.E. 1371] is affirmed.

4. Abrams' pending Motion for Limited Relinquishment of Jurisdiction [D.E. 24] is denied as moot. Per the bankruptcy court's Order Denying Motion to Enforce Without Prejudice [Bankr. D.E. 1405], Abrams may proceed to file a renewed motion for entry of judgment against Rosen.

5. The Clerk of Court shall not accept any further filings or appeals from Rosen without first obtaining permission from this Court. Any new filings or appeals by Rosen shall be accompanied by affidavits certifying that the claims being raised are novel, not frivolous, grounded in law and in fact, and brought in good faith, subject to contempt for false swearing. *See Barash v. Kates*, 586 F. Supp. 2d 1323, 1325 (S.D. Fla. 2008). This course of action is warranted due to Rosen's history of filing frivolous claims and appeals, including this one, and for the protection of limited judicial resources. *See Procup v. Strickland*, 792 F.2d 1069, 1072 (11th Cir. 1986).

The Clerk of Court is instructed to close this case. All pending motions, except Abrams' Motion for Recovery of Contractual Appellate Attorney's Fees and for Damages for Frivolous Appeal [D.E. 66], which the Court will address by separate order, are denied as moot.

Done and ordered in Chambers at Miami, Florida, this ____ day of March, 2016.

K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

c: Counsel of record